Viola SIMS, Plaintiff-Appellant,

v.

Patricia HARRIS, Secretary of Health, Education and Welfare, Defendant-Appellee.

Faith VERNON, Plaintiff-Appellant,

v.

Patricia HARRIS, Secretary of Health, Education and Welfare, Defendant-Appellee.

Nos. 78–1028, 78–1029.

United States Court of Appeals, Ninth Circuit.

Sept. 12, 1979.

**1254**

KENNEDY, Circuit Judge:

The issue presented on appeal is whether establishing different disability tests to determine the eligibility of widows, surviving divorced wives, and widowers for social security benefits creates a class not rationally related to a legitimate purpose in violation of the equal protection clause. We hold that it does not.

If the widow, surviving divorced wife or widower of a fully insured deceased wage earner is "disabled," and between 50 and 60 years of age, he or she is eligible under the Social Security Act to receive disability benefits based on a certain percentage of the benefits of the insured's spouse, 42 U.S.C. § 402(e) & (f). This class of persons is not considered disabled unless "his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in *any gainful activity*." 42 U.S.C. § 423(d)(2)(B) (emphasis added). In contrast to the quoted provision, under 42 U.S.C. § 423(d)(1)(A), "disability," for purposes of determining benefit eligibility for insured wage earners and certain other classes of persons, is defined as "inability to engage in any *substantial gainful activity* by reason of any medically determinable physical or mental impairment" (emphasis added). The issue presented on appeal is whether the distinction and the different tests for determining disabilities is a classification that violates the equal protection clause.

Plaintiffs Viola Sims and Faith Vernon filed timely applications for disability benefits based on the earnings records of their deceased husbands. After the administrative law judges found that they were not disabled under the more stringent test set forth in section 402(e) & (f) and administrative appeals were exhausted, plaintiffs sued in district court under 42 U.S.C. § 405(g),

---

Ronald T. Vera, California Legal Assistance, San Francisco, Cal., on brief for plaintiffs-appellants.

D. Michael Waltz, Asst. U. S. Atty., San Diego, Cal., on brief for defendant-appellee.

Before WRIGHT and KENNEDY, Circuit Judges, and WILLIAMS,* District Judge.

---

* Honorable Spencer Williams, United States District Judge for the Northern District of California, sitting by designation.

seeking a determination that to apply the more stringent test of that section denied them equal protection. On September 9, 1977, the district court entered an order granting the agency's motion for summary judgment. We have jurisdiction of the appeals pursuant to 28 U.S.C. §§ 1291 and 1294(1).

■ In *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir.), *cert. denied*, 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 82 (1975), the Sixth Circuit upheld the challenged provision against an equal protection claim similar to that advanced by plaintiffs here. The core of the court's holding was that it is rational for Congress to impose different eligibility conditions on wage earners than upon those whose claim to benefits is derivative, such as spouses and widows.[1] Plaintiffs urge us not to follow the *Wokojance* case or *Sullivan v. Weinberger*, 493 F.2d 855 (5th Cir. 1974), *cert. denied*, 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975), reaching a similar result, arguing that the overriding purpose of the Social Security Act is to provide income security to family units, not merely to individuals.[2] We agree with the plaintiffs that this is one goal of the Act. *See, e. g., Califano v. Goldfarb*, 430 U.S. 199, 208–09, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); *Mathews v. De Castro*, 429 U.S. 181, 185–86, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976). Congress has provided benefits to persons who have not been in the work force and who have not contributed to the fund.

■ On the other hand, also present in the Act is a policy that Social Security is more than a welfare program, that it has aspects of an insurance program as well. This fact was recognized in *Califano v. Jobst*, 434 U.S. 47, 50–53, 98 S.Ct. 95, 97–98, 54 L.Ed.2d 228 (1977), where the Court said:

As originally enacted in 1935, the Social Security Act authorized a monthly benefit for qualified wage earners at least 65 years old and a death benefit payable to the estate of a wage earner who died at an earlier age. In 1939 Congress created secondary benefits for wives, children, widows, and parents of wage earners. The benefits were intended to provide persons dependent on the wage earner with protection against the economic hardship occasioned by loss of the wage earner's support. . . .

The provision challenged in this case is part of a complex statutory scheme designed to administer a trust fund financed, in large part, by taxes levied on the wage earners who are the primary beneficiaries of the fund. The entitle-

---

1. In part, the Wokojance court said:

In this case we believe that Congress has acted neither irrationally nor unconstitutionally in extending disability benefits to widows of insured wage earners upon more stringent conditions than those upon which the same benefits are extended to the wage earners themselves. These are distinct classes of claimants—a wage earner is entitled to benefits on the basis of his own work record, while a widow enjoys only a derivative right to benefits by virtue of the insured status of her deceased spouse. We find nothing in the Constitution that requires Congress to treat all classes of claimants alike.

Before 1967, disability benefits were not available at all to widows as such. The 1967 amendments to the Social Security Act provided benefits to widows, but only to those who are severely disabled. Plaintiff seems to be arguing that Congress was constitutionally obliged to go further and to extend bene-

fits also to widows less severely disabled. We disagree. Congress need not remedy all phases of a social problem; it may move one step at a time, attacking first those aspects of the problem that it deems most urgent. See *Dandridge v. Williams*, 397 U.S. 471, 486–87, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

Finally, we note that the Fifth Circuit Court of Appeals recently considered and rejected the same constitutional argument that Mrs. Wokojance presses here. *Sullivan v. Weinberger*, 493 F.2d 855, 962–63 (5th Cir. 1974). 513 F.2d at 213.

2. Plaintiffs claim that the reasoning underlying *Wokojance* "ignores the role that Mrs. Sims or Mrs. Vernon played in contributing to their spouses' wage earning ability." We do not deny the contribution a person who is not a wage earner makes to the wage earning ability of his or her spouse, but as we hold below Congress did not act unconstitutionally in giving less than completely equal treatment to wage earners and their non-covered spouses.

ment of any secondary beneficiary is predicated on his or her relationship to a contributing wage earner. . . . The statute is designed to provide the wage earner and the dependent members of his family with protection against the hardship occasioned by his loss of earnings; it is not simply a welfare program generally benefiting needy persons. (Citations omitted).

*Cf.* 42 U.S.C. § 402(b)(2) (wife's insurance benefits equal one-half the primary insurance amount of her husband); 42 U.S.C. § 402(d)(2) (children's benefits).

■ Unquestionably, the different definition of disability for widows creates some incongruities. For example, Congress has provided that widows (and surviving divorced wives and widowers) who are 60 years old or older can receive "widow's insurance benefits" equal to the primary insurance amount of the insured deceased spouse. Once a widow reaches 60, she is entitled to receive the full amount which the insured spouse would have received, even though the widow was not herself a member of the covered work force. If, on the other hand, the widow is between 50 and 60, she must meet a disability test that is more stringent than the one applicable to her insured spouse. This difference in treatment does not, however, demonstrate that the classification is irrational.[3]

The history of the challenged provisions reflects legislative uncertainty about the fiscal impact of expanding the number of beneficiaries under the Act. The provisions in question were passed in 1967. This was the first time disability benefits were extended to widows, surviving divorced wives, and widowers. Congressman Wilbur Mills'

report from the Ways and Means Committee to the full House on H.R. 12080 stated:

A stricter test of disability than this present one for workers would apply to disabled widows and widowers. Under this test, a widow or widower would be considered disabled only if the impairment is one that is deemed sufficient to preclude him from engaging in any gainful activity—rather than any substantial gainful activity, as is required for disabled workers. We wrote this provision of the Bill very narrowly, Mr. Chairman, because it represents a step into an unexplored area where costs potentials are an important consideration.

Cong. Rec., vol. 13, p. H23049, Aug. 17, 1967.

■ The Senate wanted to eliminate the 50 year age requirement and raise the amount of benefits, but to retain the requirement that recipients be totally disabled. *See* Cong. Rec., vol. 13, p. S32595, Nov. 15, 1967. The Conference Report in the Senate indicated:

And I may add, Mr. President, not only did they come to us with a mandate of 313 to 3, but the House has just acted, by a vote of 388 to 3 on the conference bill, to back up that mandate. So it is not difficult to understand why, without higher social security taxes, it was impossible for us in the Senate to convince the House conferees of the desirability of a number of the Senate amendments, which they contended, and quite correctly, would cause an actuarial imbalance in the trust funds, and add a measure of fiscal irresponsibility to the program, unless additional revenue was provided . . . . We would have preferred to

---

**3.** Another group which receives disability benefits without necessarily having participated in the work force is minors. Minors, to receive benefits, need only satisfy the less strict test for disability. In many contexts there are rational reasons for treating minors differently from adults. Congress, for example, could rationally assume that minors were more dependent on the deceased wage earner than widows and widowers between 50 and 60 years old, and

therefore should not have to prove a disability as severe as widows must to receive benefits. As we indicate in the text, the Social Security Act reflects Congress' desire to accommodate several policies which sometimes appear to conflict. That it does not pursue any one policy with single-minded purpose does not undermine the rationality of provisions such as those before us.

do more for the disabled widows than we were able to do.

Cong. Rec., vol. 13, p. S36304, Dec. 13, 1967. We think this concern about the fiscal impact of providing disability benefits to a new class of beneficiaries is a legitimate government objective to which the challenged classification is rationally related.[4] *See Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Richardson v. Belcher*, 404 U.S. 78, 83–84, 92 S.Ct. 254, 30 L.Ed.2d 231 (1972). While the challenged provision may not fit with perfect consistency into the pattern formed by other provisions of the Act, we find no evidence that Congress has chosen to follow only the goal of complete parallelism in coverage to the exclusion of all fiscal concerns. The classification is sufficiently rational to be upheld against plaintiffs' equal protection challenge. We agree with the conclusion reached by the Sixth Circuit in *Wokojance* and the Fifth Circuit in *Sullivan*.

The orders appealed from are AFFIRMED.

**4.** We agree with plaintiffs that the mere fact that a classification saves money because it does not extend benefits to some people, by itself, does not demonstrate the classification's rationality. But we also believe that concern about the fiscal impact of expanding a program, which in some respects resembles an insurance program, to include a new class of beneficiaries may provide a rational reason for imposing more stringent eligibility requirements on that class.

Plaintiffs argue that the Social Security Administration's experience in operating the Supplemental Security Income program, enacted in 1972, should have provided Congress with evidence of the cost of paying disability benefits to people in plaintiffs' position. SSI pays disability benefits to widows, among others, based on the same definition of disability employed for insured wage earners under the Social Security Act, the more lenient definition. But plaintiffs present no evidence as to what the experience under SSI has been; we do not know how costly paying benefits to people in plaintiffs' position has been. Moreover, we doubt that plaintiffs in this lawsuit may properly challenge Congress' failure, after 1974, to amend the statute, or the Secretary's failure to enact regulations at variance with his statutory mandate. The relevant inquiry is whether the provision passed in 1967 is rational.