**Essie D. COOK, Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.**

No. 85–1564.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1985.

Decided Feb. 21, 1986.

Deborah K. Garton (Hensley, Muth, Garton & Hayes, Bluefield, W.Va., on brief), for appellant.

John E. Newton, Jr., Asst. Regional Atty., Office of the Gen. Counsel, Dept. of Health and Human Services (James C. Newman, Acting Regional Atty., William M. Reinhart, Supervisory Asst. Regional Atty., Philadelphia, Pa., on brief), for appellee.

Before PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges.

MURNAGHAN, Circuit Judge.

Essie Cook appeals from the decision of the United States District Court for the Western District of Virginia, affirming the decision of the Secretary of Health and Human Services to deny her widow's Social Security insurance benefits.

## I.

Essie Cook was born on March 8, 1931, and completed the eighth grade in school. Her husband, Clewit Cook, died on October 19, 1982. At the time of his death, Clewit Cook was a fully insured individual within the meaning of the Act. Essie Cook has not remarried.

In February, 1983, Cook filed applications for wage earner's disability insurance benefits on her own account, pursuant to 42 U.S.C. § 423(a), and also for widow's benefits, pursuant to 42 U.S.C. § 402(e)(1), on the basis of arthritis and mental illness. Both claims were initially denied, but a *de novo* hearing was subsequently held before an administrative law judge. In March, 1984, the administrative law judge issued two decisions, one granting the claim for wage earner's disability benefits accruing in her own right, the other denying the claim for widow's benefits to which her claim to entitlement arose through her late husband.[1] In August, 1984, the Appeals Council denied Cook's request for review of the denial of widow's benefits. Cook then sought review in the United States District Court for the Western District of Virginia. On April 29, 1985, the district court affirmed the Secretary's decision.

## II.

Disabled wage earners are entitled to receive Social Security benefits under 42 U.S.C. § 423(a). In addition, widows of deceased wage earners are entitled to "widow's insurance benefits" under a separate program set forth in 42 U.S.C. § 402(e),[2] if their spouses were "fully insured" according to the requirements of the Social Security Act and if they are either a) more than 60 years old or b) between ages 50 and 60[3] and "under a disability." The term "disability" is defined in 42 U.S.C. § 423(d)(2). That section establishes two different definitions of "disability": one for wage earners, and one for widows and widowers. A wage earner is "under a disability" if

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A). However, a widow or widower

> the two benefits. Thus, even if Cook can establish her entitlement to widow's benefits, she can receive only one, *i.e.*, the larger of the two amounts to which she is entitled.

---

1. The amount which Cook could receive, should she succeed in proving her entitlement to both types of benefits, would be limited by the provisions of § 402(K)(3)(A). That section provides that if an individual is entitled to both a disability benefit and "any other monthly insurance benefit" (including a widow's benefit), the other benefit shall be reduced by the amount of the disability insurance benefit. The effect of the provision is to limit the recipient to the larger of

2. Widowers are entitled to receive "widower's insurance benefits" under 42 U.S.C. § 403(f).

3. Cook was 51 at her husband's death.

shall not be determined to be under a disability (for purposes of section 402(e) ...) unless his or her physical or mental impairments are of a level of severity which ... is ... sufficient to preclude an individual from engaging in any gainful activity.

§ 423(d)(2)(B).

The effect of the two different definitions of "disability" is to create one standard for entitlement to benefits for disabled widows and widowers and another standard for entitlement to wage earner's disability benefits. For a widow, the disability determination is based on medical evidence pertaining to physical or mental impairments alone; age,[4] education, and work experience are not considered, nor is the availability of work in the national economy. Moreover, a widow must be incapable of performing *any* gainful activity, while a disabled wage earner must be incapable of performing only *substantial* gainful activity. While the latter distinction may seem slight, the only difference being, as a matter of definition, "insubstantial" activity, the legislative history indicates, and courts have concluded, that Congress intended to establish a stricter standard for disabled widows and widowers

than for disabled wage earners. *See* Conf. Rep. No. 1030, 90th Cong., 1st Sess. (1967), *reprinted in* 1967 U.S.Code Cong. & Ad. News 3179, 3197; *Sims v. Harris,* 607 F.2d 1253, 1255–56 (9th Cir.1979); *Wokojance v. Weinberger,* 513 F.2d 210, 212 (6th Cir. 1975).[5] Several courts have upheld the constitutionality of the distinction under the Equal Protection Clause. *Sims v. Harris, supra,* 607 F.2d at 1257; *Wokojance v. Weinberger, supra,* 513 F.2d at 213; *Sullivan v. Weinberger,* 493 F.2d 855, 862–63 (5th Cir.1974).[6]

42 U.S.C. § 423(d)(2)(B) gives the Secretary of Health and Human Services authority to prescribe regulations defining the level of severity of various impairments which is sufficient to preclude a widow from engaging in any gainful activity. The Secretary has accordingly issued regulations codified at 20 C.F.R. §§ 404.1577–79. Section 404.1578 provides that the Secretary will consider an impairment sufficiently severe to preclude an individual from engaging in any gainful activity when the claimant is not currently working and when the impairment matches or is "medically equivalent to" one of a series of specified impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.[7] The listed impair-

---

4. Age is relevant to determine whether an applicant meets the eligibility requirement for widow's benefits. It has no role to play, however, in deciding whether the applicant is disabled.

5. We assume that, nevertheless, the ALJ, in reaching his decision that Cook had not qualified for widow's benefits, did so without regard to the fact that she had been held to be entitled to wage-earner benefits in her own right. Had she been a housewife throughout her marriage, and, consequently, however diligent and effective she had been in keeping a home for her wage-earning husband, had not accumulated qualifying quarters, her rights to widow's benefits, while they manifestly should not have been augmented because of the absence of the safety net of her own wage-earner benefits, equally as importantly should they have been no less. Her status as a wage earner is simply irrelevant to her eligibility *vel non* for widow's benefits. We trust that, on remand, which we order for reasons to be explained subsequently in this opinion, her benefits as a disabled wage earner will play no part, express or implied, in the decision as to whether she qualifies for widow's benefits.

6. Neither the constitutionality of the statute nor the consistency of the regulations with congressional intent has been raised for our consideration. Because, for other reasons, we find it necessary to remand the matter, we note that Cook would not be precluded from raising such points if she were so inclined.

7. The Secretary has also issued regulations concerning the determination of disability for wage earners. 20 C.F.R. § 404.1520. Wage earners' disability evaluations are made according to a five-step process. First, the claimant must not be currently working. Second, the claimant must have a "severe" impairment. The "severity" of the impairment is determined on the basis of medical evidence alone. The first part of the severity test involves a comparison of the claimant's impairment with the list of impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. If the claimant's impairment matches or is equivalent to one of the listed impairments, the claimant is considered disabled from doing any gainful activity. If it does not match or is not equal to one of the listed impairments, however, it may still be considered "severe" enough to proceed

ments that are relevant to Cook's arthritis claim are found in sections 1.02, 1.03, and 1.04 of Appendix 1.[8] The listed impairment that is relevant to Cook's mental disability claim is found in section 12.04 of the same Appendix.[9] Although section 12.04 has recently been revised,[10] it is the older version

to the next step. If the impairment meets that lower severity test, the next question is whether the claimant can do his or her past relevant work. If the claimant cannot do the work he has done in the past, the final question is whether, considering the claimant's age, education, and experience, he is capable of doing other work in the national economy. Only if he cannot perform any other work will he be considered disabled.

The disability evaluation for widows and widowers corresponds to the first two steps of the disability evaluation for wage earners. As for wage earners, the first question for widows is whether they are currently working. Also as for wage earners, the second question is whether the claimant's impairment matches or is equivalent to one of a series of listed impairments. However, for widows and widowers, the inquiry stops there. There is no possibility of being found disabled on the basis of a less severe impairment together with age, education, and experience.

**8.** Section 1.02 provides:

1.02. *Active rheumatoid arthritis and other inflammatory arthritis.* With both A and B:

A. Persistent joint pain, swelling, and tenderness involving multiple joints with signs of joint inflammation (heat, swelling, tenderness) despite therapy for at least 3 months, and activity expected to last over 12 months; and

B. Corroboration of diagnosis at some point in time by either:

1. Positive serologic test for rheumatoid factor; or

2. Antinuclear antibodies; or

3. Elevated sedimentation rate.

Section 1.03 provides in relevant part:

1.03. *Arthritis of a major weight-bearing joint (due to any cause)* with limitation of motion and enlargement or effusion in the affected joint, as well as a history of joint pain and stiffness. With:

A. Gross anatomical deformity . . .; or

B. Ankylosis [stiffening] of the hip outside of the position of function (i.e., at less than 20° or more than 30° of flexion measured from the neutral position) and x-ray evidence of either joint space narrowing with osteophytosis or bony destruction (with erosions or cysts); . . . .

Section 1.04 provides:

1.04. *Arthritis of one major joint in each of the upper extremities (due to any cause)* with limitation of motion and enlargement or effusion in the affected joints as well as a history of joint pain and stiffness and x-ray evidence of either joint space narrowing with osteophy-

tosis or bony destruction (with erosions or cysts). With:

A. Abduction of both arms at the shoulders, including scapular motion, restricted to less than 90 degrees; or

B. Gross anatomical deformity such as subluxation, contracture, bony or fibrous ankylosis, joint instability, or ulnar deviation.

**9.** Mental disorders are classified into four categories: chronic brain disorders, functional psychotic disorders, functional nonpsychotic disorders, and mental retardation. The category that is relevant to the present case is functional nonpsychotic disorders, described in section 12.04 as follows:

12.04. *Functional nonpsychotic disorders* (psychophysiologic, neurotic, and personality disorders; addictive dependence on alcohol or drugs). With both A and B:

A. Manifested persistence of one or more of the following clinical signs:

1. Demonstrable and persistent structural changes mediated through psychophysiological channels (e.g. duodenal ulcer); or

2. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or

3. Persistent depressive affect with insomnia, loss of weight, and suicidal preoccupation; or

4. Persistent phobic or obsessive ruminations with inappropriate, bizarre, or disruptive behavior; or

5. Persistent compulsive, ritualistic behavior; or

6. Persistent functional disturbance of vision, speech, hearing, or use of a limb with demonstrable structural or trophic changes; or

7. Persistent, deeply ingrained, maladaptive patterns of behavior manifested by either:

a. Seclusiveness or autistic thinking; or

b. Pathologically inappropriate suspiciousness or hostility;

B. Resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.

**10.** 50 Fed.Reg. 35,038, 35,068 (1985). The revision was undertaken in response to Section 5 of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794, which required the Secretary to design new criteria for all impairments listed under the category "Mental Disorders" in Appendix 1. Congress directed that the new criteria were to

of the regulation that is applicable to Cook's claim.[11]

Cook argues that the Secretary erred in making the factual determination that Cook is not disabled within the meaning of the statute and the applicable regulations. The Secretary's determination must be upheld if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

### 1. *Procedural Deficiencies Relating to the Arthritis Claim*

. The Secretary found that Cook suffered from arthritic pain in her hips and knees, which made walking difficult, as well as in her shoulders, wrists, and fingers. She also experienced weakness of the hands, which limited her ability to grasp and carry. However, her "neurological status" and gait were normal. The Secretary concluded that, while her arthritis constituted a "severe" impairment, it did not match or equal any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

On the other hand, there is ample evidence in the record to support a determination that Cook's arthritis met or equalled one of the arthritic impairments listed in Appendix 1, Section 1.01. For example, Sections 1.02, 1.03, and 1.04 all require a history of joint pain. Cook had a history of pain in her hip, knee, and shoulder joints. Section 1.02 lists an elevated sedimentation rate as one of three alternative requirements; Cook's sedimentation rate was 5 mm/hr, which may or may not be "elevated." X-rays demonstrated "degenerative changes" and joint space narrowing in the hips and shoulders. There was also significant limitation of motion. Section 1.04 re-

quires "abduction" of the shoulders to be less than 90 degrees; Cook's shoulder abduction was reduced to 70 degrees in one shoulder and 50 degrees in the other. Flexion of each hip was reduced to 30 degrees, and flexion of the knee joints was also reduced, although the exact number on the medical chart is illegible. The symptoms appear to correspond to some or all of the requirements of sections 1.02, 1.03, and 1.04.

Administrative determinations are· required to be made in accordance with certain procedures which facilitate judicial review. In the present case, the Secretary failed to comply with those procedures in two important respects, with the result that we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not.

First, the Secretary is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of her decision a statement of the reasons for that decision. The decision of the ALJ, which became the Secretary's decision as a result of the denial of review by the Appeals Council, fails to explain the reasons for the determination that Cook's arthritis did not meet or equal a listed impairment. The full explanation offered by the ALJ is as follows:

. An examination and x-rays of the right hip and left shoulder in May 1983 established the existence of severe osteoarthritis with moderate to severe limitation of motion of the claimant's shoulders, elbows, wrists, knees, hips, neck, and back as well as markedly decreased grip. However, the claimant's arthritis impair-

---

provide a more realistic evaluation of the ability of a mentally impaired individual to engage in gainful activity in a competitive workplace. *Id.* at § 5(a).

**11.** Section 5(c)(1) of the Social Security Disability Benefits Act·of 1984, *supra* note 10, provides that any determination that an applicant is not mentally disabled rendered under the old regulations in a "reconsideration of or hearing on an

initial disability termination" held after the date of enactment of the Act and prior to the effective date of the new regulations, shall be redetermined by the Secretary under the new criteria. Cook's claim does not come under the terms of that provision. The regulations became effective on August 28, 1985, and the date of enactment of the Act was October 9, 1984. The hearing and reconsideration of Cook's initial determination occurred in March, 1984.

ment does not meet or equal in severity the requirements of Section 1.01 of Appendix 1, Subpart P as there is no joint enlargement, deformity, effusion, or the other mandated criteria.

This explanation is deficient for several reasons. First, it suggests that the examination was limited to one hip and one shoulder,[12] whereas in fact all of her major joints were examined. More important, the decision failed to identify the standard to be applied. The ALJ referred to section 1.01, but section 1.01 actually includes four subsidiary lists of impairments: section 1.02, "active rheumatoid arthritis and other inflammatory arthritis;" section 1.03, "arthritis of a major weight-bearing joint;" section 1.04, "arthritis of one major joint in each of the upper extremities;" and section 1.05, "disorders of the spine." The ALJ did not explain which of those listed impairments were considered to be relevant. He also failed to compare Cook's symptoms to the requirements of any of the four listed impairments, except in a very summary way. Finally, he said that "there is [sic] no ... other mandated criteria," which presumably means that he thought that Cook presented *none* of the symptoms described under *any* of the four impairments listed within section 1.01. If that is what the ALJ meant, he was patently wrong, because Cook clearly demonstrated, at a minimum, a history of joint pain, ankylosis (stiffening) of the joints, joint space narrowing and joint degeneration.

■ The ALJ should have identified the relevant listed impairments. He should then have compared each of the listed criteria to the evidence of Cook's symptoms. Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination.

Second, the ALJ failed to meet his responsibility to help develop the evidence.

This circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate. *Walker v. Harris,* 642 F.2d 712, 714 (4th Cir.1981); *Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir.1980).

The additional evidence, at least some, and perhaps all, of which is not provided but needed includes the following:

1. A physician's opinion as to whether Cook suffers from joint inflammation;

2. A serologic test for rheumatoid factor;

3. A test for antinuclear antibodies;

4. A physician's opinion as to whether a sedimentation rate of 5 mm/hr is "elevated";

5. A physician's report as to whether Cook suffers from enlargement of or effusion in any weight-bearing joint, such as the hip;

6. A physician's opinion as to whether the reduced flexion in Cook's hips corresponds to the section 1.03(B) requirement of stiffening at less than 20 degrees or more than 30 degrees from the "neutral position";

7. A physician's report as to whether Cook suffers from enlargement of or effusion in any major upper-extremity joint, such as the shoulder.

■ None of the above evidence appears in the record. Without any of the tests and physician's opinions described above, it is impossible to tell whether Cook meets the requirements in the list of impairments. It must have been impossible for the ALJ to tell whether she did or did not. Thus, his failure to ask further questions and to demand the production of further evidence, as permitted by 20 C.F.R. § 404.944,

---

12. It is not clear how the ALJ concluded that an examination of one hip and one shoulder could

reveal limitation of motion in the elbows, wrists, knees, neck, and back.

amounted to neglect of his duty to develop the evidence.

### 2. The Failure to Consider the Effect of Cook's Multiple Impairments

The ALJ found that Cook also suffered from "severe mental problems" which began with her husband's death. The problems included major depression, severe anxiety, and borderline intelligence. He found that, as a result, she suffered from lack of sleep, frequent fearfulness, and a marked restriction of interests and activities. Cook demonstrated difficulty with remembering and following instructions, poor attention span and concentration, poor interpersonal relations, and difficulty with verbal expression. However, the ALJ also noted that Cook did not demonstrate any psychophysiological illness, phobic or obsessive ruminations, or bizarre or disruptive behavior. He also found that Cook did not engage in compulsive, ritualistic behavior, or suffer from functional disturbances of vision, hearing, speech, or use of a limb. She had not lost weight, and was not suicidal. Moreover, her personal habits had not deteriorated, he found, because she always appeared to be well-groomed and well-dressed. The ALJ concluded that Cook's mental impairment was "severe" but not severe enough to match or equal one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.

The ALJ's explanation of the reasons for his determination with respect to Cook's psychological impairment seems adequate. He identified the relevant listed impairment, for comparison with Cook's symptoms, as section 12.04, "functional nonpsychotic disorders." He also made a relatively careful comparison of Cook's mental problems with the criteria listed in section 12.04. The evidentiary record on Cook's mental illness is also adequately developed.

■ We find it unnecessary, however, to determine whether there is substantial evidence to support the Secretary's determination that Cook is not disabled due to mental illness, because we conclude that the Secretary improperly focused on each of Cook's impairments separately and failed to consider their combined effect. Under 20 C.F.R. § 416.923, the Secretary must evaluate the combined severity of multiple impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity." Moreover, the Secretary must make a specific and well-articulated finding as to the effect of the combination of impairments. See *Combs v. Weinberger*, 501 F.2d 1361, 1363 (4th Cir.1974); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir.1968). Here, the Secretary erred in making wholly independent evaluations of the severity of Cook's arthritis and her mental illness.

### III.

Due to the inadequate explanation of the ALJ's findings with regard to Cook's arthritis, the insufficient development of the evidence relating to arthritis, and the Secretary's failure to consider the combined effect of Cook's multiple impairments, we find it impossible to conclude that there is substantial evidence to support the Secretary's determination that Cook is not disabled. Accordingly, we reverse the judgment of the district court with directions to remand the matter to the Secretary for further consideration of Cook's claim.

**REVERSED AND REMANDED.**