872 F.2d 416
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ruby BALLARD, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant-Appellee.
 No. 88-3922.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 9, 1988.
Decided March 16, 1989.
 
 Deborah Kay Garton (Hensley, Muth, Garton and Hayes, on brief) for appellant.
 Deborah Fitzgerald (Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Chief, Social Security Litigation Division, Jacquelyn Cusumano, Assistant Regional Counsel, Department of Health and Human Services, Michael W. Carey, United States Attorney, Gary L. Call, Assistant United States Attorney, on brief) for appellee.
 Before ERVIN, Chief Judge, and WIDENER and SPROUSE, Circuit Judges.
 SPROUSE, Circuit Judge:
 
 
 1
 Ruby Ballard appeals from the district court's judgment affirming the decision of the Secretary of Health and Human Services denying her widow's benefits from May 1, 1981 through April 30, 1985. The Secretary awarded her wage earner's benefits from May 1, 1981, and widow's benefits from May 1, 1985. The only issue on appeal is whether the district court erred in affirming the Secretary's decision denying her widow's benefits for the period May 1, 1981, through April 30, 1985. Agreeing with the district court that the Secretary's decision was supported by substantial evidence, we affirm.
 
 
 2
 Ballard was born in 1929, had a seventh grade education, and at the time of her application for benefits, had qualifying work experience. She suffers from heart problems, back problems, and pulmonary problems, but most significantly suffers from a severe and chronic dysthemic disorder as well as a severe and chronic general anxiety disorder.
 
 
 3
 She filed applications for disability benefits on her own work record in December 1981, and at the same time applied for widow's benefits.[1] These applications were denied initially and upon reconsideration. She took no further action in connection with these earliest claims, but again filed for widow's benefits on July 10, 1984, and for wage earner's disability benefits on October 12, 1984. These claims were denied initially and upon reconsideration. She then requested a hearing, which was held before an administrative law judge on August 13, 1985. He issued two separate decisions. In a decision dated April 3, 1986, he found that she was entitled to wage earner's disability benefits, reopened the December 1981 application, and found that May 1, 1981 was the appropriate onset date of disability. In a companion decision of the same date, he denied her widow's benefits. She requested a review of the denial of widow's benefits. On December 19, 1986, the Appeals Council issued a decision finding that she was entitled to widow's benefits, but fixed the starting date as of May 1, 1985 instead of the 1981 date she requested. She appealed the decision fixing the onset date to the United States District Court. Following oral argument, a Magistrate, on November 30, 1987, affirmed the Secretary's decision and Ballard brings this appeal.
 
 
 4
 In Cook v. Heckler, 783 F.2d 1168 (4th Cir.1986), we discussed the different standards for determining wage earner's benefits and widow's benefits. As we noted there, there are different statutory definitions of disability for wage earners and for widows, the effect of which is to create one standard for entitlement to benefits for wage earners and another for widow's benefits. See 42 U.S.C.A. Sec. 423(d)(2) (West Supp.1988). In Cook, we said:
 
 
 5
 The Secretary has also issued regulations concerning the determination of disability for wage earners. 20 C.F.R. Sec. 404.1520. Wage earners' disability evaluations are made according to a five-step process. First, the claimant must not be currently working. Second, the claimant must have a "severe" impairment. The "severity" of the impairment is determined on the basis of medical evidence alone. The first part of the severity test involves a comparison of the claimant's impairment with the list of impairments in 20 C.F.R. Sec. 404, Subpart P, Appendix 1. If the claimant's impairment matches or is equivalent to one of the listed impairments, the claimant is considered disabled from doing any gainful activity. If it does not match or is not equal to one of the listed impairments, however, it may still be considered "severe" enough to proceed to the next step. If the impairment meets that lower severity test, the next question is whether the claimant can do his or her past relevant work. If the claimant cannot do the work he has done in the past, the final question is whether, considering the claimant's age, education, and experience, he is capable of doing other work in the national economy. Only if he cannot perform any other work will he be considered disabled.
 
 
 6
 The disability evaluation for widows and widowers corresponds to the first two steps of the disability evaluation for wage earners. As for wage earners, the first question for widows is whether they are currently working. Also as for wage earners, the second question is whether the claimant's impairment matches or is equivalent to one of a series of listed impairments. However, for widows and widowers, the inquiry stops there. There is no possibility of being found disabled on the basis of a less severe impairment together with age, education, and experience.
 
 
 7
 783 F.2d at 1170 n. 7.
 
 
 8
 Ballard's principal argument is that the administrative law judge's factual conclusions finding her disabled in 1981 for the purposes of receiving wage earner's benefits, but not sufficiently disabled at that time to receive widow's benefits, are inconsistent and that the denial of widow's benefits is precluded by the doctrine of collateral estoppel. We disagree and affirm.
 
 
 9
 Ballard, in effect, argues that the administrative law judge, in determining her wage earner's disability, considered only the first two of the five sequential steps outlined in 20 C.F.R. Sec. 404.1520. In other words, she contends that because he determined her disability by concluding that her severe impairments met or equaled the listed impairments in Appendix 1 to Subpart P of Regulation 404, he proceeded no further in that disability analysis. She further argues that since eligibility for widow's benefits depends on the same finding, i.e., that her impairments meet or equal the impairments listed in Appendix 1 of Subpart P, the administrative law judge was collaterally estopped from reaching a different factual conclusion in considering her application for widow's benefits.
 
 
 10
 We do not agree, however, that the administrative law judge so narrowly based his wage earner's determination as Ballard contends. He specifically stated that:
 
 
 11
 ... The claimant's impairment is not attended by the findings specified for any impairment included in the Listings nor do the reported clinical findings and laboratory test results indicate that the claimant has an impairment which approaches the level of severity contemplated in Appendix 1. Therefore, disability cannot be established under section 404.1520(d).
 
 
 12
 Following the sequential steps outlined above, the next step to consider is whether the claimant has the residual functional capacity to perform her past work.
 
 He concluded, among other things, that
 
 13
 The medical evidence establishes that the claimant suffers from a chronic severe dysthymic disorder, chronic severe generalized anxiety, emphysema, angina pectoris, and a history of arthralgias of numerous joints, the combined effect of which constitutes a severe impairment, but she does not have an impairment or combination of impairments listed in or medically equal to an impairment listed in Appendix 1 to Subpart P of Regulations No. 4.
 
 
 14
 The combined effect of the claimant's exertional impairments limited her to less than a full range of light work. The additional problems of pain and mental impairments so severely restrict the claimant that she would not be able to engage in substantial gainful activity on a sustained basis.
 
 
 15
 Although the administrative law judge, in his opinion, did not specifically track the language of the regulations, it is apparent that when he considered Mrs. Ballard's wage earner's claim, he went beyond the first two steps of the procedure established for analyzing such claims. Ballard's collateral estoppel argument, therefore, fails because the administrative law judge, in making the determinations of her wage earner's and widow's claims, considered different legal issues. Finally, in our view, the record establishes that substantial evidence supported the determination that Mrs. Ballard's impairments did not meet or equal the impairments listed in Appendix 1, Subpart P. We affirm the holding that she did not qualify for widow's benefits prior to May 1, 1985.
 
 
 16
 AFFRIMED.
 
 WIDENER, Circuit Judge, dissenting:
 
 17
 I must respectfully dissent from the majority's opinion in this case because I believe that, as applied to this claimant, the regulations for determining widow's disability benefits are inconsistent with the authorizing statute.
 
 
 18
 Under 42 U.S.C. Sec. 423, one cannot qualify for widow's disability benefits "unless her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity." (Emphasis added.) The Secretary's requirements for determining eligibility for widow's disability benefits are set out in the regulations at 20 CFR Sec. 404.1578. They state:
 
 
 19
 (a) We will find that you are disabled and pay you widow's ... benefits ... if--
 
 
 20
 (1) Your impairment(s) has specific clinical findings that are the same as those for any impairment in the Listing of Impairments in Appendix 1 or are medially equivalent to those for any impairment shown there; ..."
 
 
 21
 Appendix 1 provides an elaborate list of impairments, which according to the Secretary is the exclusive definition of disabilities which qualify a person for widow's disability benefits. Under these regulations, and the majority's opinion, one does not qualify for widow's disability benefits unless her physical or mental condition meets, or is medically equivalent to, one of the impairments listed in this Appendix, regardless of whether or not the person can engage in "any gainful activity."
 
 
 22
 While courts should give deference to agency regulations where "Congress has explicitly left a gap for the agency to fill," Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843-44 (1984); Wilson v. Lyng, 856 F.2d 630, 634 (4th Cir.1988), the courts cannot give controlling weight to regulations that are contrary or inconsistent with the authorizing statute. Id.
 
 
 23
 Congress has authorized the Secretary to prescribe when a person's condition is so severe as to prevent her from performing "any gainful activity." The Secretary's chosen method, however, does not provide for the individual who does not meet the exact specifics of one of the listings, or its medical equivalent, but who "could not be expected to function in a normal work environment," as the ALJ found in this case, and which factual finding is undisputed. Since this claimant is unable to function, the too restrictive content of the regulations should be a matter of indifference, for she has complied with the statute and should receive her benefits.
 
 
 
 [1]
 Her deceased husband was fully insured when he died in 1981