52 F.3d 322
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Junnie A. SCARBERRY, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 94-2000.
 United States Court of Appeals, Fourth Circuit.
 Submitted: April 4, 1995.
Decided: April 25, 1995.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Huntington. Maurice G. Taylor, Jr., Magistrate Judge. (CA-93-903-3)
 Rose A. Cyrus, Huntington, WV, for Appellant. Charlotte Hardnett, Chief Counsel, Region III, Dorothea J. Lundelius, Division Chief, Patricia M. Smith, Assistant Regional Counsel, Office of the General Counsel, Department of Health and Human Services, Philadelphia, PA; Rebecca A. Betts, United States Attorney, Stephen M. Horn, Assistant United States Attorney, Charleston, WV, for Appellee.
 S.D.W.Va.
 Before MURNAGHAN and WILKINS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Junnie A. Scarberry appeals the decision by the Secretary of Health and Human Services (Secretary) that he is not entitled to supplemental security income (SSI) benefits because he is not disabled. Because substantial evidence supports the Secretary's decision, we affirm.
 
 
 2
 * Junnie was born on July 31, 1977. On November 21, 1991, his mother, Irene Pritchard, filed an application for SSI benefits based on Junnie's alleged disability under Title XVI of the Social Security Act, 42 U.S.C.A. Secs. 1382-1383d (West 1992 & Supp.1994) (Act). Junnie allegedly was disabled because of a learning disability, behavioral problems, kidney trouble, and scoliosis. The application was denied initially and on reconsideration.
 
 
 3
 Upon request, an ALJ conducted a hearing on whether Junnie was disabled under the Act. Junnie was represented by counsel at the November 4, 1992, hearing. Both he and Mrs. Pritchard testified at the hearing. Following the hearing, the ALJ ruled that Junnie suffered from mild dextro scoliosis of the dorsal spine and a depressive disorder. According to the ALJ, Junnie had:
 
 
 4
 a moderate limitation in cognitive development/function; less than moderate limitation in communicative development/function; less than moderate limitation in development/function; less than moderate limitation in social development/function; less than moderate limitation in personal/behavioral function; no limitation in concentration, persistence, or pace.
 
 
 5
 The ALJ found that Junnie's impairments did not render him disabled under the Act. As a result, the ALJ denied benefits.
 
 
 6
 The Appeals Council upheld the ALJ's determination, which became the final decision of the Secretary. Junnie then filed suit in the federal district court. A magistrate judge, acting pursuant to 28 U.S.C. Sec. 636(c)(1) (1988), determined that substantial evidence supported the Secretary's decision. The court entered summary judgment for the Secretary. This appeal followed.
 
 II
 
 7
 Our review is limited to a determination of whether substantial evidence supports the Secretary's decision and whether the correct law was applied. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990); 42 U.S.C. Sec. 405(g) (1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). We have previously stated that substantial evidence is:
 
 
 8
 evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.
 
 
 9
 Hays v. Sullivan, 907 F.2d at 1456 (internal quotation omitted).
 
 III
 
 10
 The Act defines "disability" as the inability:
 
 
 11
 to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, in the case of a child under the age of 18, if he suffers from any medically determinable physical or mental impairment of comparable severity). 6350 35 2 42 U.S.C.A. Sec. 1382c(a)(3)(A) (West Supp.1994).
 
 
 12
 Regulations promulgated by the Secretary elaborate on this definition, as it applies to a child. The Secretary defines "comparable severity" as a child's "physical or mental impairment(s) [that] so limits [the] ability to function ... in an age-appropriate manner that [the] impairment(s) and the limitations resulting from it are comparable to those which would disable an adult." 20 C.F.R. Sec. 416.924(a) (1994). Ordinarily, for a child between the ages of three and sixteen, the impairment must substantially reduce the child's ability to "[g]row, develop, or mature physically, mentally, or emotionally and, thus, to engage in age-appropriate activities of daily living ... in self-care, play and recreation, school and academics, community activities, vocational settings, peer relationships, or family life[.]" 20 C.F.R. Sec. 416.924(a)(2) (1994); see also 20 C.F.R. Sec. 416.924b(b)(3) (1994).
 
 
 13
 Following the Supreme Court's decision in Sullivan v. Zebley, 493 U.S. 521 (1990), the Secretary promulgated regulations prescribing a sequential evaluation process to be used to determine a child's eligibility for SSI benefits. In evaluating a child, it is first determined whether the child is engaging in substantial gainful activity. If so, he is not disabled. If not, then it is determined whether the child suffers from an impairment or combination of impairments that is severe. Absent a severe impairment, the child is not disabled under the Act. If the impairment or combination of impairments is severe, reference is made to Appendix 1 of Subpart P of Part 404 of the regulations. If the impairment meets or equals any impairments listed in Appendix 1, the child is disabled. If the child does not have a listed impairment, it is necessary to conduct an individualized functional assessment (IFA) to determine whether the impairment is of comparable severity to that which would disable an adult. 20 C.F.R. Sec. 416.924(b) (1994).
 
 
 14
 Junnie's case was one in which the ALJ reached the final level of inquiry and conducted an IFA. This required him to assess Junnie, a "young adolescent,"[1] in six different areas: cognitive function; communicative function; motor function; social function; person al/behavioral function; and concentration, persistence, and pace. See 20 C.F.R. Sec. 416.924d(i) (1994).
 
 
 15
 A young adolescent generally is considered disabled if he has a marked impairment in one of the six areas and a moderate impairment in a second area, or if he has a moderate impairment in any three of the six areas. 20 C.F.R. Sec. 416.924e(c)(2)(i)-(ii) (1994). A "moderate impairment" is one that is not as severe as a marked impairment. A "marked impairment" is one that is "more than moderate but less than extreme" and exists where "the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404, Subpt. P, App. 1, Sec. 112.00C (1994); 20 C.F.R. Sec. 416.924e(b) (1994).
 
 
 16
 The regulations stress that determinations must be made "on a caseby-case basis." 20 C.F.R. Sec. 416.924e(a) (1994). In making a determination, the Secretary is to consider "all relevant evidence," which "may include medical evidence, school records, information from people who know [the child] and can provide information about [the child's] functioning ... and other evidence that can help ... assess [the child's] functioning on a longitudinal basis." 20 C.F.R. Sec. 416.924(g) (1994).
 
 IV
 
 17
 The ALJ found that Junnie had never engaged in substantial gainful activity,[2] that his impairments of mild dextro scoliosis[3] of the dorsal spine and depressive disorder[4] were severe, and that his impairments did not meet or equal, and were not equivalent to, any of the impairments listed at Part 404, Subpart P, Appendix I of the regulations. Substantial evidence supports these findings.[5]
 
 
 18
 In conducting the IFA, the ALJ rated Junnie's cognitive development and function[6] as moderately impaired. The record reflects that, as of January 1992, Junnie was in the seventh grade and in a learning disability program for language arts, reading, and math. He attended mainstream classes in social studies, physical education, science, art, and music. He improved his social studies grade from an "F" to a "C;" his other grades reportedly were "A's", "B's," and "C's." His teacher expressed her hope that he would be mainstreamed in all classes except reading.
 
 
 19
 Following the hearing, the ALJ referred Junnie to a psychologist for an examination, which took place in December 1992. His verbal IQ test score was below that of his performance IQ score. On the basis of his IQ test results, Junnie's nonverbal problem-solving was labeled "strong," while his language skills were deemed "limited." The psychologist noted that, given Junnie's age, his average performance IQ score was a more accurate representation of Junnie's problem-solving ability and general intellectual capacity than his borderline verbal IQ score.
 
 
 20
 The ALJ determined that Junnie had a less than moderate impairment in communicative function.[7] Junnie expressed himself well at the hearing. There is nothing to suggest that he was unable to communicate effectively with his peers and his family. No psychologist reported that Junnie had difficulty in this area.
 
 
 21
 Junnie's motor function[8] was found to be less than moderately impaired. The record reflects that Junnie participated in a wide variety of activities in physical education class. He was not required to participate in those few activities that hurt his back.[9] Additionally, he played baseball when he was a child and occasionally played football with friends and swam.
 
 
 22
 The ALJ concluded that Junnie had less than moderate impairments in social function.[10] The record reflects that Junnie was suspended from school for fighting during the 1990-91 school year; however, his teacher reported a complete turnaround in his behavior the following year. The psychologist who examined Junnie after the hearing reported that he demonstrated a good ability to deal with the public, to interact with others (both superiors and peers), to relate predictably in social situations, and to behave in an emotionally stable manner.
 
 
 23
 Junnie was also found to be less than moderately impaired in the area of personal/behavioral function.[11] Numerous teachers and psychologists commented on Junnie's neat appearance, and no problems in attending to his personal needs were reported or suggested. With rare exceptions, Junnie was cooperative with school officials and psychologists. During psychological tests, he was persistent, asked relevant questions when necessary, and appropriately carried out each new test.
 
 
 24
 Finally, the ALJ determined that Junnie had no limitations in the areas of concentration, persistence, and pace.[12] This finding is consistent with the report of Junnie's seventh grade teacher, who stated that he "has no problems maintaining his attention and concentration, and there are no problems with pace or persistence." Similarly, Junnie's performance during psychological tests is consistent with the ALJ's conclusion.
 
 V
 
 25
 Junnie Scarberry suffers from mild scoliosis which barely limits his physical abilities. The record demonstrates that his depressive disorder was moderate. Further, Junnie does not suffer from a marked impairment in any of the six areas covered by the IFA, nor does he suffer from a moderate impairment in any three of the six areas.
 
 
 26
 Accordingly, we find that substantial evidence supports the Secretary's decision that Junnie Scarberry is not disabled under the Act.[13] As our review of the materials before the Court reveals that it would not significantly aid the decisional process, we dispense with oral argument. The judgment is affirmed.
 
 AFFIRMED
 
 
 [1]
 Junnie was fourteen when his mother filed his SSI application and fifteen when the ALJ issued his decision. Under the applicable regulations, he is classified as a "young adolescent." See 20 C.F.R. Sec. 416.924a(b)(3)(iii) (1994)
 
 
 [2]
 Junnie testified at the hearing before the ALJ that he has never worked
 
 
 [3]
 Junnie was diagnosed with mild dextro scoliosis of the dorsal spine measuring twelve degrees. The condition does not meet or equal the listing at 20 C.F.R. Part 404, Subpt. P, App. 1, Sec. 101.05B (1994). The record reveals Junnie was able to participate regularly in a wide variety of athletic endeavors, which demonstrates that the scoliosis did not significantly limit his ability to function
 
 
 [4]
 Following the hearing before the ALJ, a psychologist performed a battery of tests on Junnie. The psychologist stated that Junnie reported "symptoms of depression including occasional depressed mood, sleep difficulty, fatigue, psychomotor retardation and irritability." The diagnostic impression was "Depressive Disorder NOS," and "Oppositional Defiant Disorder, Moderate."
 
 
 [5]
 Junnie experienced occasional episodes of bedwetting. No medical evidence revealed a disorder of the genito-urinary system. Given the dearth of evidence and the infrequent nature of the episodes, the problem is not a severe impairment
 
 
 [6]
 Cognitive function in a young adolescent is the "ability to progress in applying the skills involved in reading, writing, and mathematics; ... conceptual growth, reasoning, and problem-solving abilities." 20 C.F.R. Sec. 416.924d(i)(1) (1994)
 
 
 [7]
 For a young adolescent, communicative function is the "ability to communicate pragmatically (i.e., to meet [the child's] needs) and to converse spontaneously and interactively, expressing complex thoughts with increasing vocabulary in all communication environments." 20 C.F.R. Sec. 416.924d(i)(2) (1994)
 
 
 [8]
 Motor function, which includes both gross and fine motor skills, is the "ability to engage in the physical activities involved in physical education, sports, and social events appropriate to [the child's] age." 20 C.F.R. Sec. 416.924d(i)(3) (1994)
 
 
 [9]
 The ALJ found that Junnie's pain was not as severe as Mrs. Pritchard claimed. The ALJ rested this finding on Junnie's own testimony about the nature of his pain, the mildness of his scoliosis, and the extensive physical activities in which he participated. We will not disturb this properly supported credibility determination. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir.1994)
 
 
 [10]
 Social function is the "ability to initiate and develop friendships, to relate appropriately to individual peers and adults and to peer and adult groups, and to reconcile conflicts between [the child] and peers or family members or other adults." 20 C.F.R. Sec. 416.924d(i)(4) (1994)
 
 
 [11]
 Personal/behavioral function is the "ability to [take care of one's own] ... personal needs and safety, to respond appropriately to authority and school rules, to manifest a sense of responsibility for [oneself] and respect for others; to adapt to [the] environment; and to learn new skills." 20 C.F.R. Sec. 416.924d(i)(5) (1994)
 
 
 [12]
 This is the "ability to engage in an activity, such as studying or practicing a sport, and sustain the activity for a period of time and at a pace appropriate to [the claimant's] age." 20 C.F.R. Sec. 416.924d(i)(6) (1994)
 
 
 [13]
 On appeal, Junnie argues that the ALJ failed in his duty to fully develop the record in this case. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir.1986). We disagree. The ALJ had before him sufficient facts to determine the central issue of disability. We note that Junnie's attorney does not identify what the missing evidence would have shown; rather, she merely speculates that having that evidence "might" have produced a different result. We note additionally that, following the hearing, Junnie's counsel submitted additional evidence which the ALJ considered in rendering his decision