813 F.2d 400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Dorothy M. BENNETT, Appellant,
v.
Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.
 No. 86-1526.
 United States Court of Appeals, Fourth Circuit.
 Argued June 3, 1986.
Decided Sept. 11, 1986.
 
 Before PHILLIPS and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 Janet L. Todd, for appellant.
 James C. Breeden (Beverly Dennis, III, Chief Counsel; Charlotte Hardnett, Supervisory Assistant Regional Counsel; Heather L. Anderson, Assistant Regional Counsel; David A. Faber, United States Attorney; Sarah G. Sullivan, Assistant United States Attorney, on brief), for appellee.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 The district court held that the Secretary's determination that Dorothy Bennett was not entitled to widow's insurance benefits because she was not disabled was supported by substantial evidence. We affirm.
 
 
 2
 * Bennett's husband died on August 27, 1982. Bennett was 58 years old at the time. In order to receive widow's insurance benefits prior to her 60th birthday, she must establish that she is disabled. 42 U.S.C. Sec. 402(e)(1)(B) (1982). She alleged in her amended claim that she became disabled on March 1, 1982.
 
 
 3
 Bennett has been diagnosed as suffering from obesity, hypertension, arteriosclerotic heart disease, angina pectoris, osteoarthritis of the spine and hip, and chronic venous insufficiency with edema in her legs. She reports additional ailments, but the clinical evidence establishes that these ailments are not of sufficient severity or duration to affect her disability status.
 
 
 4
 Dr. Jack Woodrum has treated Bennett since 1971. He stated that she was not a suitable candidate for gainful employment. Dr. Rogelio Lim, Dr. Wyson Curry, and Dr. Dominic Gaziano reviewed Bennett's medical records on behalf of the Social Security Administration. They concluded that she was not disabled.
 
 
 5
 The administrative law judge reviewed Bennett's impairments and placed particular emphasis on her complaints of angina, hypertension, and chronic venous insufficiency. The ALJ rejected Dr. Gaziano's opinion on the ground that he did not give sufficient consideration to the combined effect of Bennett's impairments. The ALJ did not discuss the reports of Dr. Lim and Dr. Curry. The ALJ concluded that Bennett was disabled because of her combined impairments since March 1, 1982. The ALJ issued his decision on May 26, 1983.
 
 
 6
 On August 15, 1983, the Appeals Council reopened the ALJ's decision. It found that Bennett "has the following impairments: obesity; venous insufficiency of the lower extremities; hypertension; osteoarthritis; and possible arteriosclerotic heart disease." The Appeals Council rejected the ALJ's finding that Bennett suffers from angina pectoris. It stated:
 
 
 7
 The administrative law judge's finding of angina pectoris was made in the face of contrary statements by two State agency physicians and the medical advisor. This diagnosis was listed on only one occasion, that being her 1979 hospitalization for complaints of chest pain. Dr. Woodrum has never listed angina pectoris as one of his diagnoses, either before or after 1979, despite her several "chest pain" admissions. Further, the investigation of her complaints during the 1979 admission resulted in entirely normal findings. In view of these considerations, the administrative law judge's statements concerning angina do not appear to be supported by the evidence of record.
 
 
 8
 The Appeals Council accepted the opinions of the three agency physicians that Bennett was not disabled.
 
 II
 
 9
 In order to receive widow's insurance benefits, Bennett must establish that "her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity." 42 U.S.C. Sec. 423(d)(2)(B) (1982). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Sec. 423(d)(3) (1982). Furthermore, an impairment must "be expected to result in death or ... to last for a continuous period of not less than 12 months." 20 C.F.R. Sec. 404.1577 (1986).
 
 
 10
 The regulations provide that a widow is disabled if her "impairment(s) has specific clinical findings that are the same as those for any impairment in the Listing of Impairments in Appendix 1 or are medically equivalent to those for any impairment shown there." 20 C.F.R. Sec. 404.1578(a)(1) (1986). Disability cannot be established solely on the basis of medical diagnoses or Bennett's statements about her symptoms. Instead, the diagnoses and symptoms must be supported by clinical findings. Sec. 404.1525(d), .1528(a).
 
 
 11
 In determining whether Bennett's impairments are medically equivalent to a listed impairment, the Secretary must consider "the combined effect of all of [her] impairments." Sec. 404.1523. Social Security Ruling 83-19 provides:
 
 
 12
 Equivalency can be found under three circumstances:
 
 
 13
 1. A listed impairment for which one or more of the specified medical findings is missing from the evidence but for which other medical findings of equal or greater clinical significance and relating to the same impairment are present in the medical evidence.
 
 
 14
 2. An unlisted impairment, in which the set of criteria for the most closely analogous listed impairment is used for comparison with the findings of the unlisted impairment.
 
 
 15
 3. A combination of impairments (none of which meet or equal a listed impairment), each manifested by a set of symptoms, signs, and laboratory findings which, combined, are determined to be medically equivalent in medical severity to that listed set to which the combined sets can be most closely related.
 
 
 16
 Medical equivalence may not be established when the reported medical findings reflect lesser severity than listed criteria require (and there are no related findings of equal or greater medical significance).
 
 
 17
 As in determining whether the listing is met, it is incorrect to consider whether the listing is equaled on the basis of an assessment of overall functional impairment. The level of severity in any particular listing section is depicted by the given set of findings and not by the degree of severity of any single medical finding--no matter to what extent that finding may exceed the listed value.
 
 
 18
 The mere accumulation of a number of impairments also will not establish medical equivalence. When an individual suffers from a combination of unrelated impairments, the medical findings of the combined impairments will be compared to the findings of the listed impairment most similar to the individual's most severe impairment. The functional consequences of the impairments, ... irrespective of their nature or extent, cannot justify a determination of equivalence.
 
 
 19
 See also 20 C.F.R. Sec. 404.1526 (1986).
 
 III
 
 20
 Bennett's primary argument on appeal is that the Secretary did not properly evaluate the combined effect of her impairments. She contends that her combined impairments are medically equivalent to the listing of impairments for obesity.
 
 The listing requires:
 
 21
 Weight equal to or greater than the values specified in ... Table II for females ... and one of the following:
 
 
 22
 A. History of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine; or
 
 
 23
 B. Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with appropriate size cuff; or
 
 
 24
 * * *
 
 
 25
 D. Chronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight bearing and persistent edema....
 
 
 26
 20 C.F.R. pt. 404, subpt. P, app. 1, Sec. 10.10 (1986). Table II provides that a woman must weigh 274 pounds if she is 66 inches tall and 282 pounds if she is 67 inches tall. In addition, she must be expected to remain at this weight for 12 months. Sec. 404.1577.
 
 
 27
 Bennett is between 66 and 67 inches tall. Her highest recorded weight was 273 pounds on October 25, 1982. One month later she weighed 257 pounds. At the hearing before the ALJ on April 11, 1983, she testified that she weighed between 240 and 245 pounds. Thus, Bennett does not satisfy the weight requirements of the listing. Moreover, she has come close to the required weight only for brief periods.
 
 
 28
 Social Security Ruling 83-19 provides that Bennett can still qualify for benefits if her impairments are medically equivalent to the listing for obesity. Specifically, her impairments are equivalent if specified findings are missing but other findings of equal or greater clinical significance that relate to obesity are present, or if her combined impairments, including those not related to obesity, are determined to be medically equivalent to the listing for obesity.
 
 
 29
 Bennett asserts that she is disabled because she has three obesity-related impairments, and the listing only requires one such impairment. She also argues that her angina and heart disease, in combination with her obesity-related impairments, establish that she is disabled.
 
 
 30
 One of the obesity-related impairments is chronic venous insufficiency. 20 C.F.R. pt. 404, subpt. P, app. 1, Sec. 10.10(D) (1986). The evidence establishes that Bennett suffers from this impairment. She has been diagnosed with this illness on numerous occasions. This diagnosis is supported by repeated findings of edema, most recently in October 1982. In addition, Dr. Curry reported that Bennett's pulses were difficult to feel. Furthermore, Bennett testified that she experiences pain in her legs and feet.
 
 
 31
 Bennett fails to satisfy the listing's requirement of a "[h]istory of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis." 20 C.F.R. pt. 404, subpt. P, app. 1, Sec. 10.10(A) (1986). She has been diagnosed as having arthritis of the spine and right hip. She reports pain in both areas. There is no conclusive X-ray evidence of arthritis in her hip. X-rays do reveal "degenerative changes with anterior spur formation ... in lumbar vertebrae especially L2 and L3." However, these changes were deemed to be minimal. Moreover, there was normal curvature of the spine, the intervertebral spaces were well preserved, and there was no evidence of fracture or dislocation. Dr. Curry reported that there was no evidence of nerve root compression or muscle damage. Dr. Givind Menawat examined Bennett on behalf of the Social Security Administration. His report indicated restrictions in her range of motion. However, Dr. Gaziano stated that this loss of function was not significant. Dr. Menawat noted that Bennett could not squat or stand on her heels or toes. However, her gait was normal. Dr. Curry also reported that she could stand and walk normally. Therefore, the clinical findings do not establish that Bennett has satisfied this aspect of the listing.
 
 
 32
 Bennett also fails to satisfy the listing's requirement of hypertension with "diastolic blood pressure persistently in excess of 100 mg. Hg." 20 C.F.R. pt. 404, subpt. P, app. 1, Sec. 10.10(B) (1986). Her blood pressure has been recorded seven times since 1980. Her diastolic pressure exceeded 100 only twice, and on one of those occasions it dropped to 90 by the next day. Dr. Lim reported that Bennett's blood pressure "could be brought under better control with proper medical treatment." Moreover, Dr. Curry reported that there was no evidence that her hypertension had caused end organ damage. Thus, her hypertension fails to satisfy the listing.
 
 
 33
 Bennett has been diagnosed as having arteriosclerotic heart disease. However, the X-rays indicate that this disease is mild. Her heart is normal in overall size, although the left ventricle is enlarged. In addition, her heart sounds were reported to be normal on two occasions in 1982.
 
 
 34
 Bennett has also been diagnosed as having angina pectoris.[1] She has been admitted to the hospital six times for chest pain with the last admission occurring in June 1980. She reports that she has chest pains that radiate into her neck and left arm several times a day. She takes nitroglycerine to relieve the pain on the average of twice a day every other day and obtains relief within four to five minutes. The pain is accompanied by a squeezing sensation in her chest. However, her most recent EKG, which was taken in November 1982, showed normal sinus rhythm, nonspecific ST-T wave changes, and compared favorable with an EKG taken in 1980. Thus, the clinical findings do not support the diagnosis and symptoms. All three agency physicians concluded that Bennett's chest pain was atypical of angina.
 
 
 35
 The Secretary was required to determine whether Bennett's combined impairments were medically equivalent to a listed impairment. Dr. Woodrum stated that Bennett was not a suitable candidate for gainful employment. Dr. Lim and Dr. Curry concluded that her combined impairments did not equal the listing. Dr. Woodrum's opinion is entitled to great weight because he is Bennett's treating physician. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir.1983). However, "the testimony of a non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, No. 85-2049, slip op. at 7 (4th Cir. July 2, 1986). The reports of Dr. Lim and Dr. Curry are consistent with the record. Bennett does not meet the weight requirements of the listing. She has only one obesity-related impairment. Her arteriosclerosis is mild, and the clinical findings do not support a diagnosis or symptoms of angina. In light of the medical evidence and the opinions of Dr. Lim and Dr. Curry, the Secretary's determination that Bennett's combined impairments are not equivalent to a listed impairment is supported by substantial evidence.[2]
 
 IV
 
 36
 Social Security Ruling 83-19 provides that "it is incorrect to consider whether the listing is equaled on the basis of an assessment of overall functional impairment." Bennett asserts that this provision conflicts with the requirement that the Secretary assess the combined effect of all of her impairments. See 20 C.F.R. Sec. 404.1523 (1986). She contends that the Secretary must make her decision on the basis of an overall functional assessment.
 
 
 37
 The Ruling provides that Bennett is disabled if a "combination of impairments (none of which meet or equal a listed impairment) ... are determined to be medically equivalent" to a listed impairment. Thus, the Ruling provides for consideration of the combined effect of her impairments. The Ruling requires that this effect be compared with the set of findings for a listed impairment. To this extent the Ruling is more restrictive than an overall functional assessment of disability that is not limited to the listing of impairments. Previous cases have upheld the requirement that an applicant for widow's insurance benefits must satisfy the listing. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927, 929 (6th Cir.1983); Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 219-20 (1st Cir.1981); Sims v. Harris, 607 F.2d 1253 (9th Cir.1979). Therefore, the Ruling does not impermissibly restrict consideration of the combined effect of Bennett's impairments.
 
 
 38
 Bennett also contends that the Secretary failed to consider her testimony concerning her symptoms. This argument is meritless. The Appeals Council stated that it "considered the entire record which was before the administrative law judge, including the testimony at the hearing." Moreover, our review of the testimony discloses that it is largely cumulative of the medical evidence, which included extensive histories provided by Bennett.
 
 V
 
 39
 Finally, Bennett argues that the Appeals Council lacked jurisdiction to review the ALJ's decision because it did not act within the 60-day review period provided by 20 C.F.R. Sec. 404.969 (1986).
 
 
 40
 This issue was not raised before the Appeals Council or the district court. Therefore, in the absence of exceptional circumstances, we will not consider the issue on appeal. Skippy, Inc. v. CPC International, Inc., 674 F.2d 209, 215 (4th Cir.1982). Such circumstances are not present in this case. The 60-day period is not jurisdictional. This is evident from Sec. 404.968(b), which allows tolling of the limitation on behalf of claimants who present acceptable reasons for their tardiness.
 
 
 41
 Bennett's position is not supported by Silvis v. Heckler, 578 F.Supp. 1401 (W.D.Pa.1984), on which she relies. In that case the claimant asserted the 60-day limitation in both the administrative proceedings and before the district court. Bennett's reliance on Hyatt v. Heckler, 757 F.2d 1455 (4th Cir.1985), vacated sub nom. Hyatt v. Bowen, 54 U.S.L.W. 3803 (U.S. June 10, 1986), and Hunt v. Schweiker, 685 F.2d 121 (4th Cir.1982), is also misplaced because those cases address the different issue of the district court's jurisdiction to review a final agency decision that is not timely appealed. See 42 U.S.C. Sec. 405(g) (1982).
 
 VI
 
 42
 We have considered Bennett's remaining arguments and find that they are meritless. We affirm the district court's judgment that the Secretary's determination that Bennett is not entitled to widow's insurance benefits because she is not disabled is supported by substantial evidence.
 
 
 43
 AFFIRMED.
 
 
 
 [1]
 The Secretary erred in stating that angina had been diagnosed only once and not by Dr. Woodrum. Because the clinical findings do not support this diagnosis, this error is harmless
 
 
 [2]
 Bennett's contention that the proper standard of review is whether the decision of the ALJ is supported by substantial evidence is erroneous. See Lovejoy v. Heckler, 790 F.2d 1114, 1116 (4th Cir.1986); Kellough v. Heckler, 785 F.2d 1147, 1149-51 (4th Cir.1986)