**B. Tyler HUNTINGTON, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of the Social Security Administration, Defendant.**

**Civil Action No. L–99–1354.**

United States District Court, D. Maryland.

June 22, 2000.

Robert R. Jenkins, Jenkins, Block & Associates, Baltimore, MD, for plaintiff.

Allen F. Loucks, Lynne A. Battaglia, Office of the United States Attorney, Baltimore, MD, for defendant.

## MEMORANDUM

GESNER, United States Magistrate Judge.

### I. *Background*

Plaintiff, B. Tyler Huntington, brought this action, pursuant to 42 U.S.C. § 405(g), for review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. Currently pending are Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand, and Defendant's Motion for Summary Judgment. (Paper Nos. 12 and 13). These motions have been assigned to the undersigned on consent of the parties pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, the Court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.

Plaintiff applied for disability insurance benefits ("DIB") on February 1, 1992, alleging disability beginning on June 10, 1991, due to multiple surgeries on his cervical spine and impingement syndrome of the right shoulder. (R. 113). The Social Security Administration denied his application initially and upon reconsideration. (R. 73–75; 79–80). Plaintiff did not pursue further his claim of February 1, 1992.

On February 24, 1993 plaintiff filed a second application for disability insurance benefits, alleging disability commencing June 10, 1991 due to cervical fusions and rotator cuff surgery. (R. 81–84 and 125). This application was denied in an initial determination on April 19, 1993. (R. 85–87). Plaintiff did not further pursue this claim. (R. 16).

On February 18, 1997, plaintiff filed the current application to reopen his previous cases, seeking to establish entitlement to disability insurance benefits, again alleging disability as of June 10, 1991, due to neck and shoulder pain. (R. 99). The claim was denied initially (R. 97–98) and upon reconsideration. (R. 101–102). On June 4, 1998, plaintiff appeared with counsel before an administrative law judge ("ALJ"). (R. 35–63). In a written decision dated July 3, 1998, the ALJ determined that plaintiff was not disabled. (R. 16–27). The Appeals Council denied plaintiff's request for review (R. 4–5), making the decision of the ALJ final and reviewable in this Court pursuant to 42 U.S.C. § 405(g).

### II. *Standard of Review*

The role of this Court on review is to determine whether substantial evidence supports the ALJ's decision and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g) (1991); *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). This Court cannot try the case *de novo* or resolve evidentiary conflicts but rather must affirm a decision supported by substantial evidence. *Hays,* 907 F.2d at 1456. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Teague v. Califano,* 560 F.2d 615, 618 (4th Cir.1977). It is more than a scintilla but less than a preponderance of the evidence presented. *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir.1984). It is such evidence sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays,* 907 F.2d at 1456. In reviewing for substantial evidence, the Court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the agency. *Id.*

This Court must also determine whether the ALJ properly applied the law. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987).

In determining whether one is disabled, the Commissioner has promulgated regulations that set forth a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520. This five-step process, described by the Supreme Court in *Bowen v.*

*Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), begins with the ALJ determining whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 *et seq.* If the claimant is engaged in a substantial gainful activity, the claimant is considered not disabled. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the claimant is not engaged in a substantial gainful activity, the ALJ, at the second step, examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920.

If the durational and severity requirements are met, the ALJ's analysis proceeds to a third step—a consideration of whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is known as the Listing of Impairments ("Listing"). If one of the Listings is met, disability will be automatically found without consideration of age, education, or work experience. If a Listing is not met, however, the ALJ then moves to a fourth step and considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. If the ALJ finds that a claimant does retain the RFC to perform past relevant work, then the claimant will be found to be not disabled.

If a determination is made that the claimant is not capable of performing past relevant work, the ALJ moves to a fifth and final step and considers whether, based upon the claimant's RFC, age, education, and past work experience, the

claimant is capable of some other work. The burden shifts to the Commissioner at this step. *Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir.1995). If the claimant suffers solely from exertional impairments,[1] the Medical–Vocational Guidelines, as defined in part 404, Subpart P, Appendix 2 (the "Guidelines"), provide rules to be applied in determining whether a claimant is disabled. *Gory v. Schweiker,* 712 F.2d 929, 930 (4th Cir.1983). An ALJ, in applying the Guidelines, will examine the claimant's age, education, work experience, and residual functional capacity ("RFC") to determine which rule applies. *Gordon v. Schweiker,* 725 F.2d 231, 235 (4th Cir. 1984). The rule will direct a conclusion as to whether a claimant is disabled. *Gory,* 712 F.2d at 930.

The Guidelines, however, will not be used when the claimant suffers from both exertional and nonexertional impairments. *Smith v. Schweiker,* 719 F.2d 723, 725 (4th Cir.1984). In such a case, the ALJ is required to employ the use of a vocational expert to determine whether the claimant is still capable of some work. *Grant v. Schweiker,* 699 F.2d 189, 192 (4th Cir. 1983). If the claimant is not capable, disability will be found.

### III. *The ALJ's Decision*

The ALJ evaluated plaintiff's claim for DIB using the above-described, five-step sequential process set forth in 20 C.F.R. § 404.1520. At the first step, the ALJ determined that plaintiff did not engage in substantial gainful activity since the onset of his alleged disability. (R. 17). At step two, the ALJ determined that residual damage due to plaintiff's cervical surgeries and fusion and torn right shoulder rotator

---

1. Impairments may be exertional and nonexertional. An exertional impairment is one that affects the claimant's ability to meet the strength demands of certain jobs. 20 C.F.R. §§ 404.1569a and 416.969a. A nonexertional impairment is a "limitation that is present whether a claimant is attempting to perform the physical requirements of the job or not." *Gory v. Schweiker,* 712 F.2d 929, 930 (4th Cir.1983). "[W]here the claimant's impairment is nonexertional—not manifested by a loss of strength or other physical abilities—or is marked by a combination of exertional and nonexertional impairments, the [Guidelines'] Rules are not conclusive, and full individualized consideration must be given to all relevant facts of the case." *Grant v. Schweiker,* 699 F.2d 189, 192 (4th Cir.1983).

cuff, and related restrictions of motion and pain caused by these problems, impinged on plaintiff's ability to engage in some basic work-related functions and, thus, constituted severe impairments. (*Id.*). Progressing to step three, the ALJ found that the impairments which he had identified as "severe" at step two did not meet or equal any listing in the Listing of Impairments set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P., App. 1. (R. 17–18). At step four, the ALJ found that plaintiff could not return to his past relevant work as a fire fighter, which was performed at the very heavy level of exertion, but that plaintiff retained the RFC to perform light work activities not involving repetitive right arm movement and reaching overhead with the right arm.[2] (R. 18–21 and 23). At step five, the ALJ found that plaintiff could not perform the full range of light work, but that, based on the testimony of a vocational expert, there were a number of light jobs suitable for an individual with plaintiff's age, education, past work experience and RFC. (R. 23–25). Thus, the ALJ concluded, plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*).

### IV. *Summary of Evidence*

Plaintiff, a high school graduate, was 40 years old at the time of the alleged onset of disability in 1991 and was 47 years old at the time of his hearing in 1998. Plaintiff was employed as a firefighter until he was given a disability retirement in January, 1991. (R. 45–46; 152–53).

Plaintiff's first spinal surgery, a right partial hemilaminectomy and removal of a cervical disc, was performed in January 1971, when plaintiff was twenty years old. (R. 279). In June 1984, when plaintiff was thirty three years old, he underwent a second spinal surgery, an anterior cervical discoidectomy and interbody fusion for herniated cervical discs. (R. 184). After these first two surgeries, he was rated as having a 25% permanent partial impairment to the cervical spine. (R. 265–267).

After the second surgery, plaintiff continued to complain of pain in the right shoulder. (R. 175–176). In January 1991, after an incident at work, plaintiff had also reported neck pain as well as right shoulder symptoms. (R. 170–74). An MRI done in March 1991, revealed tendinitis in the shoulder and large spurs in the neck. (R. 268–269). Following physical therapy and the MRI, a third spinal surgery, including discectomies, fusions and bone grafting of the cervical spine, was performed in July 1991. (R. 193). Upon discharge, the final diagnosis for plaintiff was "degenerated cervical disks, C4–5 and C5–6." (R. 192). Plaintiff's right shoulder pain continued until plaintiff received arthroscopic surgery with acromioplasty in October 1991. (R. 188–89). In January 1992, plaintiff again had his right shoulder operated on. (R. 232–33).

In a November 5, 1992 report, treating orthopedist Dr. Michael Franchetti notes that plaintiff reports that his right shoulder symptomatology has continued to improve but that he has noted, over the last month, that he has an increase in paresthesia[3] in both upper extremities, although greater in the right. (Paper No. 12 at 2, appending p. 1 of 11/5/92 Franchetti report; R. 207). Dr. Franchetti directed plaintiff to continue using Naprosyn which plaintiff had found clinically effective and told him to return in three weeks for reevaluation. (R. 207).

---

**2.** 20 C.F.R. § 404.1567(b) defines light work as "lifting no more than 20 pounds at a time with frequent lifting of carrying of objects weighing up to 10 pounds." Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls.

**3.** Paresthesia is defined as "an abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus." *Dorland's Medical Dictionary* 1234 (28th ed.1994).

On November 25, 1992, Dr. Franchetti again examined plaintiff and noted that plaintiff reported that he still had essentially a constant neck ache but that his extremity paresthesia had nearly resolved. (R. 206). As to plaintiff's cervical spine, the doctor noted tenderness in the midline with loss of motion in all planes with discomfort at extremes of extension and motion to each side. Dr. Franchetti performed an upper extremity neurological exam of plaintiff and noted that he could not appreciate any clinical strength or sensory deficits during his examination. With respect to plaintiff's right shoulder, Dr. Franchetti noted no tenderness and good, but not full, range of motion. Plaintiff was advised to continue taking Naprosyn to relieve pain and to continue with home traction and strengthening exercises at home with a dumbbell set. (*Id.*).[4]

Shortly after the November 25, 1992 visit to Dr. Franchetti, it appears that plaintiff, for the most part, ended medical care for his orthopedic injuries. (Paper No. 12 at 3). Other than a report dated February 10, 1993 prepared by plaintiff's orthopedic surgeon, Dr. Ronald Ottenberg, which discussed his previous treatment of plaintiff (R. 152–53), plaintiff did not provide any medical records for the period from Dr. Franchetti's report of examination on November 25, 1992 and April of 1996 when plaintiff visited his family physician, Dr. E.S. Machado, for an undisclosed reason. (R. 61, 294).

Although Dr. Machado had not been treating plaintiff for his orthopedic problems, he completed a Medical Assessment of Ability to do Work–Related Activities (Physical) Form dated June 1, 1998 stating that plaintiff had been under treatment since April 26, 1996, and was restricted by multiple surgeries. Dr. Machado noted

that plaintiff was limited to lifting and carrying less than 20 pounds; can stand and/or walk for only one hour in an eight hour work day (not continuously); can sit for two hours out of an eight hour work day; and was restricted from reaching and from pushing and pulling activities with his hands and arms. (R. 292–93).

At his June 4, 1998 hearing, plaintiff testified that he has a chronic neck ache, sharp right shoulder pain that comes and goes, and a constant ache in the right shoulder. (R. 55–56). He explained that he has problems sitting for more than an hour, because his arms go to sleep. He also has trouble standing and cannot stand for longer than an hour or two in one spot. He can only walk one or two blocks before he has to sit down to rest. (R. 58–59). He sleeps poorly at night and wakes up three to four times during the night. (R. 60). He reported that he takes Naprosyn, Aleve, and ibuprofen. (R. 55). During the day, plaintiff said he needed to sit down in a flat position five or six times a day for 30–60 minutes each time. (R. 56).

Plaintiff is separated from his wife and lives at home with his two children, ages 12 and 14. (R. 49). Plaintiff reported that he can drive if wearing a neck brace, (R. 128), and that he drives "less than a couple hundred miles each week." (R. 48). He can walk five blocks to take his children to a local swimming pool. (R. 51–52). He took a plane trip to Detroit with no problems. (R. 48). Plaintiff worked seasonally at a golf driving range from 1993 through 1996 teaching golf and working as a cashier and as an usher at Redskins home games in 1997. (R. 40–47 and 63).[5]

Vocational expert ("VE") Robert Lester, who testified at the hearing, listed plaintiff's past work as a firefighter as very heavy and skilled, and indicated that certain skills, such as supervising, recording,

**4.** Naprosyn is a non-steroidal anti-inflammatory drug used to relieve pain. *Physicians' Desk Reference* at 2277 (51st ed.1997).

**5.** Plaintiff testified at his hearing on June 4, 1998 that he "used to play golf quite often. I play very seldom now." (R. 48). This state-

ment somehow evolved into the ALJ's conclusion that plaintiff gave up playing golf in 1996. (R. 21). While the Court believes the ALJ's conclusion on this point gives more than the benefit of the doubt to the plaintiff, the Court will accept the ALJ's conclusion.

reporting and inspecting, could be transferable to other positions. (R. 64). The ALJ questioned the VE in the form of a hypothetical question which included all of the limitations found credible by the ALJ. (R. 64–66). The VE concluded that there were jobs available in substantial numbers which plaintiff could perform. (*Id.*). Specifically, the VE found that sedentary skilled work, such as a customer service representative or dispatcher, could be found by an individual with plaintiff's age, education and past relevant work experience who was limited to light work, no climbing, and no overhead reaching. (R. 65).

## V. *Analysis*

Plaintiff raises three arguments to support his position that the ALJ's decision is erroneous and is not supported by substantial evidence.[6] For the reasons that follow, the Court rejects each of these arguments.

### A. *The ALJ Did Not Err in Finding that Plaintiff Did Not Meet or Equal Listing 1.05C.*

Plaintiff challenges the ALJ's finding at step three of the sequential analysis that

he did not meet or equal Listing 1.05C in the Listing of Impairments set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1. (Paper No. 12 at 5). Specifically, plaintiff claims that the ALJ's failure to identify, address or evaluate the case under Listing 1.05C constitutes reversible error. (R. at 17–18). The Commissioner argues that there is no evidence that plaintiff meets or equals this Listing. (Paper No. 13 at 10). As explained below, the Court finds that the medical evidence fails to support that plaintiff meets or equals Listing 1.05C.

In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a "Listing" where there is factual support that a listing could be met. *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir.1986) (case remanded, in part, because of ALJ's failure to specifically identify relevant "Listing" and compare each of the listed criteria to the evidence of the claimant's symptoms).[7] The ALJ's analysis must reflect a comparison of the symptoms, signs,

**6.** Plaintiff also argues that the reopening of his two prior applications (1992 and 1993) is appropriate in this case. (Paper No. 12 at 8). In support thereof, plaintiff relies on 20 C.F.R. §§ 404.988(b) and 404.989(a)(1) noting that reopening of prior applications is appropriate if new and material evidence is furnished and the subsequent applications are filed within four years of the date of the notice of the initial determination. (*Id.*). In response, defendant argues that: 1) Dr. Machado's report does not constitute new and material evidence because it is based upon clinical data which existed at the time of plaintiff's original application; and 2)while plaintiff's current application was filed within 4 years of his second application, it should not serve to reopen his first application which was filed more than 4 years before. (Paper No. 18–19). While the Court agrees with both arguments made by defendant, the issue of reopening of plaintiff's prior applications is irrelevant to this case in its current posture. First, it is evident that plaintiff's current application claims a disability date of June 10, 1991, which is the same onset date alleged in plaintiff's first two applications. And, clearly,

the ALJ's decision addresses whether the plaintiff is disabled as of that date. Finally, given that the Court is affirming the ALJ's finding that plaintiff is not disabled, there is no issue regarding the alleged onset date of the disability for purposes of deciding the appropriate amount of retroactive benefits to be awarded. In sum, the reopening of prior applications is a question of form, not substance.

**7.** Relying on *Cook v. Heckler*, 783 F.2d 1168 (4th Cir.1986), plaintiff argues that the ALJ should have identified the listings pertinent to his impairments and then compared each of the listed criteria to the medical evidence in the record. (Paper No. 12 at 6). The Commissioner responds that *Cook* does not apply in the present context since *Cook* dealt with disabled widow's benefits which, at the time of the court's decision, were governed by a more stringent disability standard than the type of disability benefits at issue here. (Paper No. 13 at 12). While the applicability of *Cook* in the DIB and SSI context is unclear, it is clear that the "duty of identification of relevant listed impairments and comparison

and laboratory findings concerning the impairment, including any resulting functional limitations, with the corresponding criteria set forth in the relevant listing. *See* 20 C.F.R. §§ 404.1526(a) and 416.926(a); *Cook*, 783 F.2d at 1172. In order to meet a Listing, every element of the listing must be satisfied. *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

■ In this case, the medical evidence does not support the conclusion that plaintiff's back impairments meet or equal Listing 1.05C, "Disorders of the spine," as set forth in 20 C.F.R., Chapter III, Pt. 404 Subpt. P, App. 1. Listing 1.05C provides:

> C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis)with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>
> 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
> 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

Here, the ALJ found that the medical evidence established that plaintiff had "residuals from multi-level cervical spine surgery and fusion as well as residuals from 2 right shoulder surgeries, restriction of motion, and pain, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (R. 26). While there is ample evidence of plaintiff's spinal problems, there is insufficient evidence that plaintiff meets the other requirements of Listing 1.05C so as to have merited consideration of this List-

ing by the ALJ. Specifically, there is inadequate evidence that plaintiff suffered from muscle spasms, motor loss, muscle weakness or sensory loss for the duration required by Listing 1.05C. Therefore, the ALJ was not required to compare the medical evidence of record to the criteria of Listing 1.05C.

Although plaintiff did suffer muscle spasms in August, 1975 (R. 198) and June 1991 (R. 277), nothing in the record suggests that the spasms continued between 1975 and 1991 or were frequent, ongoing and persistent, as required by Listing 1.05C. Similarly, the medical records note that motor loss was present only during May and June 1984 (R. 182, 195, 274, 285) and again in December 1991 and January 1992 (R. 214, 216, 223 and 234) but the records do not establish that the motor loss was persistent, as required under the Listing.

As to muscle weakness, plaintiff cites to May and June 1984 and December 1991 and January 1992 reports to support the presence of this symptom. (R. 182, 195, 214, 216, 223, 234, 274, 285). The records reflect, however, that these occasional periods of muscles weakness were initially reported after surgery, but reports in June 1991 (R. 168), August 1991 (R. 163) and November 1992 (R. 206), reveal good strength and muscle development and no clinical strength deficits. (R. 163, 168, 206 and 277).

Similarly, plaintiff's claim of sensory loss is unsupported by the record. The only information (other than isolated references in 1975 (R. 200) and 1984(R. 195)) relating to sensory loss is an October 31, 1991 progress report indicating diminished sen-

---

of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md.1999). As noted in *Ketcher,* the Fourth Circuit has adopted this approach in a series of unpublished opinions and, specifically, has noted that *Cook* "does not establish an inflexible rule requiring an exhaustive

point-by-point discussion in all cases." *Id.; see also France v. Apfel,* 87 F.Supp.2d 484, 488 n. 5 (D.Md.2000)(ALJ's brief opinion on listing held sufficient). For the reasons discussed herein, the Court does not find ample evidence to support a determination that the plaintiff meets or equals Listing 1.05C. Therefore, the ALJ did not have a duty to identify the listing or compare the symptoms in the listing to the evidence of record.

sation in the "medial one and one-half fingers of his right hand." (R. 157). Within a few days, on November 4, 1991, this numbness had completely resolved. (R. 156). Arguably, there is one other indication relating to sensory loss in the record. A November 5, 1992 report states that plaintiff had noted, over the last month, an increase in paresthesia in his upper extremities. (R. 207). Assuming that paresthesia, or an abnormal touch sensation, is equivalent to the sensory loss required by the Listing, plaintiff reported on November 25, 1992, just three weeks after first mentioning this symptom, that his extremity paresthesia had nearly resolved. (R. 206). Thus, the complaints of paresthesia appear .to have been present only briefly and, therefore, are inadequate to meet or equal the Listing. On the contrary, there are several references in the record to the fact that plaintiff was not suffering from any sensory deficit. (R. 163, 206 and 278).

Because there is no factual or medical support for much of Listing 1.05C, the ALJ was not required to compare the medical evidence of record to the criteria of this Listing. *See Cook v. Heckler*, 783 F.2d at 1168. Accordingly, the Court finds no merit in plaintiff's contention that the ALJ erred by failing to find him disabled under Listing 1.05C or by failing to provide a discussion of the listing in his written decision.

### B. *The ALJ Properly Evaluated Plaintiff's Complaints of Pain.*

Plaintiff contends that the ALJ committed reversible error in failing to consider the effect of plaintiff's various forms of pain on his ability to work. (Paper No. 12 at 6). Plaintiff further asserts that the ALJ erred in referring specifically to the evidence supporting the ALJ's conclusion that plaintiff's allegations of pain were not credible. (*Id.* at 7–8). For the reasons stated below, the Court concludes that the ALJ adequately addressed plaintiff's allegations of pain.

■ Where a claimant alleges disability due to pain, the ALJ must apply the Commissioner's regulations, 20 C.F.R. § 404.1529 and § 416.929, which establish a two-step process for evaluating whether a person is disabled by pain and other symptoms. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir.1996). At the first step, the ALJ must determine that objective evidence shows the existence of a medical impairment which could reasonably be expected to produce the actual pain in the amount and degree alleged by the claimant. *Id.* At the second step of the *Craig* inquiry, the ALJ must evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine the extent to which those symptoms limit the claimant's capacity to work. *Id.* at 595; 20 C.F.R. §§ 404.1529(c)(1); 416. 929(c)(1). At this second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and his treating or examining physicians, objective medical evidence of pain, and any other information proffered by the claimant, such as the claimant's account of what aggravates the pain, medications taken to alleviate the pain, and a summary of how the pain affects daily living. 20 C.F.R. §§ 404.1529(c)(1)-(3); 416.929(c)(1)-(3).

■ The ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims of pain can reasonably be accepted. 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate his allegations of pain. 20 C.F.R. § 404.1529; *see also Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir.1994)(pain may render claimant incapable of working independent of any physical limitation, but allegations of pain alone are insufficient for disability to be found). The ALJ must make a finding regarding a claimant's credibility and should refer specifically to the evidence

supporting this finding. *Hammond v. Heckler,* 765 F.2d 424, 426 (4th Cir.1985).

■ In this case, the ALJ appropriately recognized his obligation to evaluate plaintiff's complaints of disabling pain and restrictions in accordance with 20 C.F.R. § 404.1529. (R. 23). Specifically, the ALJ noted the question presented to him was whether the plaintiff's subjective complaints of disabling cervical spine and right shoulder pain and the limitations resulting therefrom were as severe as plaintiff alleged and that this question needed to be determined from the record as a whole. (*Id.*). After analyzing the evidence of record, the ALJ concluded that plaintiff's claims of exertional and nonexertional restrictions could not be fully credited so as to preclude all light work activity with certain restrictions. (R. 23, 26).

While the ALJ acknowledged that plaintiff experienced periodic discomfort resulting from his multiple cervical surgeries, and two right shoulder procedures, he pointed to several facts which were inconsistent with the conclusion that plaintiff's pain was as disabling as plaintiff maintained. Of particular note is the fact that plaintiff had not had any "appreciable medical examination or care for cervical or right shoulder disorders since November 1992." (*Id.*). In addition, as the ALJ noted, plaintiff had remained active enough to maintain seasonal employment at a golf driving range and to live with his two children and to drive himself where he needed to go. (R. 23).[8]

The ALJ's analysis was appropriate in that "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." *Mickles,* 29 F.3d at 921. It bears noting that the ALJ did not fully discredit plaintiff's allegations of pain, but rather only those allegations that would preclude him from performing a range of light work with the limitations of lifting, reaching or stretching with his right arm and raising his right arm overhead. (R. 26). The ALJ's decision not to fully credit plaintiff's allegations of pain is supported by substantial evidence.[9]

### C. The ALJ Properly Evaluated the Opinion of Plaintiff's Treating Physician, Dr. Machado.

■ Plaintiff argues, in summary fashion, that the ALJ erred in rejecting the medical opinion of his treating physician, Dr. Machado. Specifically, plaintiff notes that the medical evaluation form prepared by Dr. Machado establishes that plaintiff is disabled and that, by rejecting this conclusion, the ALJ impermissibly exercised his own, independent medical judgment. (Paper No. 12 at 5). Plaintiff notes that the only other evaluations in the file were written by nontreating, nonexamining Disability Determination Services ("DDS") doctors, the most recent of which was in 1993, who should be accorded little weight, in light of Dr. Machado's evaluation. The Commissioner maintains that the ALJ properly discounted Dr. Machado's opinion because it was neither well supported nor adequately explained. For the reasons that follow, the Court concludes that the ALJ's decision to reject the opinion of Dr. Machado is supported by substantial evidence.

---

8. In addition, the record reflects that plaintiff can take care of his personal needs (R. 123); he worked as a security usher at Redskins home games (R. 40, 47); he traveled to Detroit with no problem (R. 48); and he is able to walk five blocks to take his children to the pool. (R. 51–52). It also appears that the over the counter medication which plaintiff takes helps relieve his pain. (R. 50, 207).

9. Plaintiff points out that the VE testified that most work would be precluded if the hypo-

thetical person needed to lie down 5 or 6 times a day for 30 to 60 minutes each time. (R. 65–66). Therefore, plaintiff argues that if the ALJ had properly credited plaintiff's testimony that there would be no jobs for him in the national economy. While that may be true, for the reason stated above, the Court concludes that the ALJ properly excluded the above described limitation from the hypothetical it posed to the VE.

In determining how much weight to give to a medical opinion, the ALJ is required to apply the factors listed in § 404.1527(d) and § 416.927(d). These factors require the ALJ to consider whether the source of the medical opinion has examined the claimant; the length, nature, and frequency of the treatment relationship; the degree to which the medical opinion is supported by evidence and explanation; the consistency of the medical opinion with the record as a whole; the specialization of the source of the medical opinion; and any other factors which the claimant presents in support of the medical opinion. *Id.*

In this case, the record contains a four page medical assessment form filled out by Dr. Machado on June 1, 1998. (R. 291–94). There is no accompanying record of clinical observations or findings by Dr. Machado to support the conclusions he set forth on the form. There were no ongoing diagnostic or treatment records from November 1992 to the date of Dr. Machado's report which would support a conclusion that plaintiff's diagnosis or physical abilities had appreciably changed. (R. 22). Instead, Dr. Machado's report simply cites the dates of plaintiff's prior surgeries and an MRI finding, all of which were part of the record when the 1993 application was considered. (R. 291–94).

A review of the medical opinions clearly reflects that there is an apparent conflict among plaintiff's treating physicians.[10] The ALJ concluded that it was appropriate to place controlling weight on the assessment of plaintiff's treating orthopedist, Dr. Franchetti, rather than on Dr. Machado. (R. 22).[11] In so concluding, the ALJ relied on Social Security Ruling 96–2p which pro-

vides that controlling weight should be given to the medical opinion of a treating physician as long as that opinion is well supported and not inconsistent with the other substantial evidence in the record. In view of the lack of diagnostic or clinical reinforcement for Dr. Machado's opinion and the other substantial evidence of record, the ALJ's conclusion to accept the opinion of Drs. Franchetti and Fink was appropriate.

Indeed, it appears that Dr. Machado was treating plaintiff for an unrelated medical problem; had not specifically treated plaintiff for his orthopedic problems relating to this disability claim, and simply filled out the medical assessment form at issue here. For the reasons noted above, the Court finds the form unpersuasive and, accordingly, concludes that the ALJ's determination that Dr. Machado's report is insufficient to support a finding of disability is supported by substantial evidence.

## VI. *Conclusion*

For the foregoing reasons, plaintiff's motion for summary judgment or, in the alternative, motion for remand will be denied and the defendant's motion for summary judgment will be granted.

---

10. Indeed, Dr. Machado relies on the same records and tests that plaintiff's other doctors relied on in reaching contrary conclusions. For example, Dr. Machado noted that an MRI from 12/5/91 showed a large osteophyte which was "impinging on anterior spinal cord." (R. 291). Dr. Franchetti, the treating orthopedist, and Dr. Fink, the treating neurosurgeon, both concluded that a myelogram at the same time as the MRI noted there was no "frank nerve root compression." (R. 22).

11. As noted in the ALJ's opinion (R. 22), Dr. Franchetti found that plaintiff's cervical spine was tender in the midline with some loss of motion in all directions with discomfort on extremes; and no right shoulder tenderness with good but not full range of motion. (R. 206).